# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| DAVID E. GROW, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | 3:08-cv-0063-JWS |
| vs. | ) ) | ORDER AND OPINION |
| | ) ) | [Re: Motion at Docket 16] |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## I. MOTION PRESENTED

Plaintiff David E. Grow ("Grow"), having exhausted his administrative remedies, filed a Social Security complaint in this court alleging the final decision of the Social Security Commissioner was not supported by substantial evidence and/or was erroneous as a matter of law and regulation. At docket 16, Grow requests reversal of the June 26, 2006 final decision and/or remand pursuant to 42 U.S.C. § 405(g). At docket 18, defendant Commissioner ("Commissioner") responds. Grow replies at docket 19. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

This dispute arises from the Commissioner's denial of Grow's application for disability benefits. On September 25, 2000, Grow filed an application for a period of

disability and disability insurance benefits. Grow also filed an application for supplemental security income on August 31, 2000. Both claims alleged that Grow had been unable to work since August 1, 1998, due to depression and an HIV infection manifesting as acquired immunodeficiency syndrome ("AIDS"). The Social Security Administration ("Administration") initially denied his claim on February 22, 2001, but, after a hearing by Administrative Law Judge John Bauer ("ALJ Bauer"), issued a partially favorable decision on March 12, 2003, granting a closed period of disability. Because the decision contained conflicting dates regarding the onset date of the closed period, Grow appealed. Nevertheless, Grow was paid disability benefits based on a disability period beginning on July 26, 2000 and ending in September 2001.[1]

After review by the Appeals Council, the March 12, 2003 decision was vacated and remanded for further proceedings. In its order dated September 9, 2005, the Appeals Council noted the conflicting disability onset dates of January 26, 1999, July 26, 2000, and January 26, 2000. Although the end dates also conflicted, each date fell in September 2001. The Appeals Council also noted that 20 C.F.R. § 404.321(c)(2) provides that entitlement to a period of disability ends the second month following the month in which the disability ended which, in this case, would have been at the close of November 2001.[2] Therefore, the Appeals Council remanded the action to (1) address a statement made by a lay witness, Terry McMahill ("McMahill"), pursuant to the requirements of *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993); (2) evaluate Grow's mental impairment pursuant to 20 C.F.R. §§ 404.1520a and 416.920a; (3) obtain supplemental evidence from a medical expert to clarify the nature and severity of Grow's HIV impairment, and (4) if necessary, obtain a vocational expert to assist in comparing Grow's residual functional capacity ("RFC") to his past relevant work. Additionally, after the March 12, 2003 decision, Grow filed subsequent claims for benefits in November 2003. Given the Appeals Council's action, those claims were

---

[1]Doc. 16 at 3 (citing Administrative Record ("AR") 77).

[2]Grow's initial award letter also recognizes this rule. AR 77.

-2-

rendered duplicate, and the Appeals Council directed the Administrative Law Judge on remand to associate the new claims with the existing claims.

On remand, a new Administrative Law Judge, Ruperta M. Alexis ("ALJ Alexis"), denied Grow's claims on the ground that Grow was not disabled at any time since he filed his initial claim on September 25, 2000. In a decision dated June 26, 2006, ALJ Alexis found that Grow's depression was not a severe impairment because, *inter alia*, "[Grow's] statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible."[3] Furthermore, contrary to ALJ Bauer's findings, ALJ Alexis concluded that his HIV-related impairments did not meet the criteria of section 14.08(I) of the impairments listed in Appendix 1, Subpart P of 20 C.F.R. § 404. It appears that ALJ Bauer and ALJ Alexis reached different conclusions because different medical experts testified at each hearing. At ALJ Bauer's hearing, Dr. Marvin S. Wolf ("Dr. Wolf") testified that Grow "had diarrhea and weight loss that met or equaled medical listing 14.08(I), HIV wasting syndrome . . . [and] that [Grow's] depression probably worsened [his] condition." At ALJ Alexis' hearing, Dr. William Spence testified that "at no time from the alleged onset of disability to the present time has [Grow] met or equaled a Listing from the Listing[] of Impairments . . . [and] opined that although [Grow's] weight has fluctuated from 145 to 130 pounds, . . . none of the other sequelae of an 'HIV wasting syndrome' . . . as described at 14.08I" were present." Based on Dr. Spence's opinion, ALJ Alexis concluded that Grow was not entitled to a period of disability and further concluded that Grow's RFC did not preclude him from engaging in past relevant work.

### III.  STANDARD OF REVIEW

The Social Security Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

---

[3]AR 23.

expected to last for a continuous period of not less than 12 months."[4] A claimant is not disabled if he or she can engage "in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."[5]

Disability claims are evaluated using a five-step sequential analysis.[6] At step one, the ALJ determines whether the claimant is "working and the work [is] substantial gainful activity."[7] If the claimant is doing substantial gainful activity, the claimant is not disabled, regardless of medical condition, age, education or work experience.[8] At step two, the ALJ assesses the severity of the claimant's impairment or combination of impairments - that is, whether the impairment or combination of impairments significantly limits basic work activities.[9] If those impairments do not so limit claimant's ability to work, the claimant is not disabled. At step three, the ALJ considers whether the claimant's impairment or combinations of impairments meets or equals an impairment listed in an appendix to the regulations.[10] At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is capable of performing work he has performed in the past fifteen years.[11] In analyzing whether a claimant is capable of performing past relevant work, an ALJ must compare a claimant's RFC with the physical

---

[4] 42 U.S.C. § 423(d)(1)(A).

[5] *Id.* § 423(d)(2)(A).

[6] 20 C.F.R. § 404.1520(a)(4); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

[7] 20 C.F.R. § 404.1520(b).

[8] *Id.*

[9] *Id.* § 404.1520(c).

[10] *Id.* § 404.1520(d) and 20 C.F.R. pt. 404, subpt. P, App. 1.

[11] 20 C.F.R. § 404.1520(e).

-4-

and mental demands of a claimant's past relevant work.[12] If the claimant can still do his or her past relevant work, the claimant is deemed not to be disabled.

If the claimant cannot perform past relevant work, the evaluation process moves to the fifth and final step. At step five, the ALJ assesses the claimant's RFC, "together with vocational factors . . . to determine if [the claimant] can make an adjustment to other work."[13] If the claimant can make an adjustment to other work, the ALJ will conclude that he is not disabled. "The claimant carries the initial burden of proving a disability in steps one through four of the analysis."[14] If the claimant establishes the inability to perform past relevant work, the burden then shifts to the ALJ to "show that the claimant can perform other substantial gainful work."[15] In making this assessment, the ALJ considers the claimant's RFC, age, education, and work experience, as well as whether alternative jobs exist in the national economy in significant numbers, either in the region in which claimant resides or in several regions in the country.[16]

Upon denial of disability benefits, a claimant may request the Appeals Council to review the ALJ's decision.[17] Where, as here, the Appeals Council denies a request for review, the decision of the ALJ represents the final decision of the Commissioner.[18] The claimant may then seek judicial review of the ALJ's decision by the district court.[19] On *de novo* review, the district court may enter, upon pleadings and a transcript of the record, a judgment affirming, modifying, or reversing the ALJ's decision, with or without

---

[12]*Id.* § 404.1520(f).

[13]*Id.* § 404.1520(g).

[14]*Burch*, 400 F.3d at 679.

[15]*Id.*

[16]20 C.F.R. §§ 404.1520(g) and 404.1560(c).

[17]20 C.F.R. § 404.967.

[18]*Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 n.1 (9th Cir. 2004) (citing 20 C.F.R. § 404.981).

[19]42 U.S.C. § 405(g).

-5-

remanding the case for a rehearing.[20]  The ALJ's decision must be upheld if it is supported by substantial evidence and the ALJ applied the correct legal standards.[21] "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[22]

## IV.  DISCUSSION

Grow attacks ALJ Alexis' decision on several grounds in his motion for remand. First, Grow contends that his medical records support a finding that his depression constituted a severe impairment rendering him disabled from August 1998 through September 2001.  In this regard, Grow also argues that ALJ Alexis improperly failed to consider the lay testimony of McMahill.  Next, Grow argues that ALJ Alexis improperly discredited the testimony of Grow and Grow's treating physician, Dr. Madeline Grant ("Dr. Grant"), thereby causing ALJ Alexis to err at Step Three.  Finally, Grow claims that, at the very least, ALJ Bauer's decision clearly intended to award benefits beginning on January (and not July) 26, 2000.

The Commissioner responds that ALJ Alexis' finding that Grow's depression was not a severe impairment is supported by substantial evidence and that ALJ Alexis properly evaluated Grow's subjective complaints.  Moreover, with respect to Grow's severe depression, the Commissioner argues that ALJ Alexis' failure to consider lay witness McMahill's testimony was harmless error.  Finally, the Commissioner contends that ALJ Alexis properly resolved the conflicting medical evidence regarding HIV wasting syndrome presented in the record and at the hearing.

---

[20] *Id.*

[21] *Howard v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2001).

[22] *Id.* (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

## A. Evidence of Severe Depression

### 1. Grow's Testimony and Medical Records Regarding His Depression

Grow first argues that ALJ Alexis improperly discredited his testimony regarding the severity of his depression when she concluded that "[t]he testimony at the hearing and the medical evidence in the case record suggest . . . that [Grow] has undergone some degree of depression . . . [but] that [Grow's] depressive disorder is not a severe impairment."[23] This conclusion was based on ALJ Alexis' finding that Grow ceased counseling within six months of the death of his partner and the report of Grow's psychiatric examiner, Dr. William Campbell ("Dr. Campbell"), who stated on February 9, 2001, that Grow's mental health had returned after a bout with "a single episode of major depressive disorder.[24] In so concluding, ALJ Alexis discredited Grow's symptom testimony as "not necessarily indicative of a disabled state so much as an understandable grieving state."[25]

In order to find a claimant's testimony regarding his symptoms unreliable, "the ALJ was required to make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"[26] "To determine whether a claimant's testimony regarding subjective symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"[27] "The claimant . . . 'need not show that [his] impairment could

---

[23]AR 22.

[24]*Id.*

[25]AR 23.

[26]*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

[27]*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).

-7-

reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom.'"[28] The ALJ should not reject subjective symptom testimony simply because the claimant cannot make a showing that his impairment cannot reasonably produce the *degree* of the symptom alleged.[29] "Second, if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering clear and convincing reasons for doing so.'"[30] Great weight should be given to the ALJ's credibility determinations because the ALJ is the only person to come face to face with live witnesses.[31]

Here, although Grow met the first prong by providing objective medical evidence of some depression in the form of reports prepared by Dr. Grant and a report by Dr. Campbell ("Campbell"), ALJ Alexis provided clear and convincing reasons for disregarding Grow's symptom testimony. Although Dr. Grant opined on April 27, 2000, that Grow was disabled "due to a combination of his severe depression as well as his AIDS," she continued, in the same report, that Grow's depression was "doing better."[32] Moreover, other evidence in the record indicates that Dr. Grant's opinion is not well supported. For instance, ALJ Alexis found that Dr. Grant herself did not entirely believe that Grow's depressive disorder was as serious as he claimed by pointing to notes dated October 14, 2002, in which Dr. Grant concluded that she did not believe Grow

---

[28]*Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1991)).

[29]*See Lingenfelter*, 504 F.3d at 1036 (quotation and citation omitted); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[t]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")

[30]*Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281).

[31]*See* 1 Social Security Claims and Procedures § 8:109 (5th ed. 1998 & Supp. 2008).

[32]AR 241.

was disabled "at the present time."[33] ALJ Alexis also relied on a form completed by Grow on November 17, 2000, in which Grow reported that he is able to engage in a litany of daily activities including, among other things, driving, shopping, singing in a church choir, cleaning, laundry, playing piano, surfing the Internet, and visiting with friends.[34] These are not the daily activities of a severely depressed individual.

Furthermore, contrary to Grow's contention, ALJ Alexis did not discredit Dr. Grant's opinions. Rather, she concluded that Grow's medical records, which primarily consist of Dr. Grant's office notes, simply do not indicate that Grow's depression was any more severe than his own testimony reveals. Tellingly, in most of the office notes during Grow's period of claimed disability, Dr. Grant reported that Grow's depression was doing "better,"[35] "fairly well"[36] or even "quite well."[37] In fact, the court can discern only one occasion - January 26, 2000 - where the medical records indicate that Grow's depression could be categorized as major or severe.[38] However, Grow's mental health was nevertheless "improved" in less than three months[39] and continued without any major changes throughout the remainder of his medical history. Indeed, as discussed above, by November 2000 Grow reported no difficulties in daily care or maintenance, and his own testimony reveals a man able to live a normal and functional existence unencumbered by depression. This conclusion is bolstered by the opinion of Dr. Campbell, whose interview with Grow on February 9, 2001, revealed that Grow's depression had been successfully treated with Zoloft and that he was "sleeping

---

[33]AR 335.

[34]AR 146-51.

[35]AR 241.

[36]AR 240.

[37]AR 239, 341.

[38]AR 246.

[39]AR 244.

Case 3:08-cv-00063-JWS   Document 20   Filed 02/05/09   Page 9 of 15

better and feeling a lot better."[40] Thus, ALJ Alexis was justified in viewing Dr. Grant's April 27, 2000 opinion as "inconsistent with other substantial evidence in the record" and even contradicting Dr. Grant's own notes on Grow's condition.[41] Because substantial evidence supports ALJ Alexis' determination that Grow did not suffer from "severe depression" as defined pursuant to the Social Security Act, the court upholds her determination.

### 2. McMahill's Lay Testimony Regarding Grow's Depression

Grow also argues that ALJ Alexis improperly disregarded the statement of McMahill in evaluating his claim of severe depression. The Commissioner concedes that ALJ Alexis erred by not considering McMahill's statement, but argues that this error was harmless because McMahill's statements are unsupported by the medical evidence regarding Grow's depression. The general rule governing lay witness testimony is that "[i]f an ALJ wishes to discount the testimony of the lay witness, he must give reasons that are germane to each witness."[42] This is particularly true where, as here, the Appeals Council directs an ALJ on remand to consider lay testimony. Nevertheless, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant," a reviewing court may consider the error harmless where "it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."[43]

Because ALJ Alexis' error "was inconsequential to the ultimate nondisability determination," the court agrees with the Commissioner that it was harmless.[44] McMahill's statement, prepared concurrently with Grow's daily activities questionnaire,

---

[40]AR 315-16.

[41]*Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

[42]*Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

[43]*Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

[44]*Id.* at 1055.

-10-

essentially parrots information provided in Grow's questionnaire. As discussed above, this information does not support a finding that Grow was suffering from debilitating depression. Rather, the court finds that Grow's questionnaire and McMahill's statement support the opposite conclusion - that Grow was not suffering from severe depression in December 2000. Coupled with Grow's medical records spanning the entire claimed disability period and the report by Dr. Campbell discussed above, the additional factor of McMahill's statement could not lead a reasonable ALJ, fully crediting the testimony, to the conclusion that Grow was suffering from severe depression during the period of claimed disability.

**B. Evidence of HIV Wasting Syndrome**

With respect to ALJ Alexis' finding at Step Three that Grow's HIV manifesting as AIDS did not meet the criteria of impairment listing 14.08(I) (HIV wasting syndrome), the court finds that ALJ Alexis did not err. Like ALJ Bauer, ALJ Alexis found at Step Two that Grow's HIV manifesting as AIDS was a severe impairment. ALJ Alexis subsequently concluded at Step Three that Grow's condition did not meet the impairment listing at Appendix 1, section 14.08(I) - HIV wasting syndrome - because his diarrhea was not "a severely debilitating condition."[45] In so concluding, ALJ Alexis credited fully the testimony of Dr. Spence, the impartial medical expert, who testified that Grow did not meet the impairment listing at section 14.08(I). ALJ Alexis did not credit Grow's testimony ensconced in the notes of Grow's treating physician, Dr. Grant. Thus, at Step Three ALJ Alexis reached the opposite conclusion of ALJ Bauer, who found, based on Dr. Wolf's testimony, that Grow did meet the impairment listing at 14.08(I), and awarded Grow benefits for a closed period of disability beginning January 26, 2000 and ending September 10, 2001.[46] It is clear from the record that the differing opinions of Drs. Wolf and Spence led ALJs Bauer and Alexis, respectively, to opposite conclusions.

---

[45]AR 24.

[46]See infra.

-11-

Nevertheless, based on a review of the medical evidence, the decisions of both ALJs, and the transcripts of both hearings, the court finds that ALJ Alexis properly concluded that Grow did not meet a 14.08(I) impairment listing and provided adequate reasons for denying Grow's claim that his HIV met the listed impairment for "wasting syndrome" at Step Three. Section 14.08(I), which describes the listing impairment for HIV wasting syndrome, states in pertinent part that:

> HIV wasting syndrome [is] characterized by involuntary weight loss of 10 percent or more of baseline . . . and . . . either:
> 1. Chronic diarrhea with two or more loose stools daily lasting for 1 month or longer; or
> 2. Chronic weakness and documented fever greater than 38 °C (100.4 °F) for the majority of 1 month or longer.[47]

Where a claimant fails to show by objective medical evidence that he *both* experienced "weight loss of 10 percent or more of baseline" *and* "[c]hronic diarrhea" or "[c]hronic weakness" as described above, he or she cannot meet this listing.

Here, Grow's testimony and medical records, as well as the testimony of Dr. Spence, confirm that Grow did not experience weight loss of 10 percent or more of his baseline within the period of claimed disability. In concluding that Grow did not meet the 14.08(I) impairment listing, ALJ Alexis relied on Dr. Spence's testimony that the claimant's weight had fluctuated between 145 and 130 pounds, but that this was "cutting it too close" because Dr. Spence did not see in the medical records that Grow had experienced any "trend of weight loss" or anything "clinically suggestive of a wasting syndrome."[48] Dr. Spence is correct. Moreover, although the record does show that Grow's weight fluctuated from 146 3/4 pounds on November 6, 1997, to as low as 130 ½ pounds on March 3, 2000, Grow's high weight mark of 146 3/4 pounds occurred outside of Grow's period of claimed disability. The highest weight achieved by Grow during his claimed period of disability was 141 pounds on March 21, 2001. Because the difference between 130 ½ pounds and 141 pounds amounts to less than 10 percent of

---

[47] 20 C.F.R. § 404, Subpt. P. App. 1, 14.08(I).

[48] AR 578.

-12-

Case 3:08-cv-00063-JWS   Document 20   Filed 02/05/09   Page 12 of 15

Grow's baseline weight, Grow's medical records do not show weight loss that would lead a reasonable ALJ or this court to conclude that he suffered from HIV wasting syndrome.

Furthermore, ALJ Alexis concluded that "the source of [Grow's] diarrhea is not entirely clear from the medical record . . . [and] it does not appear from the claimant's testimony or the contents of the case file that this was a severely debilitating condition."[49] A review of Dr. Grant's notes reveals that, while Grow spoke to Dr. Grant frequently about his diarrhea, he never appears to have followed Dr. Grant's directions to deliver a stool sample so that a remedy might be sought. Moreover, although Grow is correct that an ALJ is required to "give more weight to opinions from [a claimant's] treating sources" pursuant to the treating physician rule, 20 C.F.R. § 404.1527(d)(2), it does not appear from the record that ALJ Alexis discredited Dr. Grant with respect to Grow's 14.08(I) impairment claim. Rather, ALJ Alexis merely concluded, and Dr. Spence confirmed, that neither Dr. Grant's notes nor Grow's testimony established that Grow suffered from diarrhea rising to the level required for the HIV wasting syndrome impairment listing. Therefore, because Grow experienced neither weight loss nor chronic diarrhea consistent with 14.08(I) wasting syndrome, the court will not disturb ALJ Alexis' decision at Step Three.

Although ALJ Alexis denied Grow benefits and this court affirms her decision, Grow nevertheless appears to have received benefits pursuant to ALJ Bauer's favorable decision for the period beginning July 26, 2000 and ending September 10, 2001.[50] Because disability benefits generally do not begin until a claimant has been disabled for five months, Grow's first month of entitlement to benefits was January 2001.[51]

---

[49]AR 24.

[50]Doc. 16 at 3 (citing AR 77).

[51]*See* 42 U.S.C. § 423(c)(2). The "five month rule" also appears on the Social Security Administration's website, which states that "[i]f your application [for disability] is approved, your first Social Security disability benefits will be paid for the sixth full month after the date your disability began." *See* Disability Benefits, SSA Pub. No. 05-10029, November 2008, ICN 456000, at p. 12, *available at* http://www.ssa.gov/pubs/10029.pdf

-13-

Case 3:08-cv-00063-JWS   Document 20   Filed 02/05/09   Page 13 of 15

Moreover, because entitlement continues for two months after the end of a period of disability, Grow's last month of entitlement was November 2001.[52] The court also understands from Grow's representations that Grow was paid benefits for an 11-month period beginning in January 2001 and ending in November 2001. Although the Commissioner may generally seek to recover an overpayment of benefits, equity and good conscience preclude such recovery where a claimant has "changed his or her position for the worse . . . or relinquished a valuable right . . . because of reliance upon a notice that a payment would be made or because of the over-payment itself."[53] Given the period of time that has elapsed since payment, Grow has undoubtedly changed his position in reliance on these benefits and, therefore, the Commissioner is precluded by equity from seeking to recover them.

It bears noting that the payment fell short of what was ordered in ALJ Bauer's decision. ALJ Bauer's decision reveals that, for purposes of his analysis, ALJ Bauer had divided Grow's claimed period of disability into three segments: (1) July 30, 1998 through January 25, 2000; (2) January 26, 2000 through September 10, 2001; and (3) September 11, 2001 through the present. Based on his analysis, ALJ Bauer stated at page 6 of his decision that Grow was entitled to disability for the second segment only - the period beginning January 26, 2000 and ending September 10, 2001.[54] Although ALJ Bauer went on to conclude that Grow's period of disability began on July 26, 2000 in Finding 11 and in his decision on page 9, that date cannot be correct. Were the court to conclude that July 26, 2000 was the correct start date of Grow's period of disability, the period of time between July 26, 2000 and January 25, 2000, which forms a part of the period for which ALJ Bauer awarded Grow benefits, would stand in a vacuum left unaddressed. Grow was therefore entitled to receive a payment

---

(last visited on January 22, 2009).

[52]*See* 42 U.S.C. § 423(a) and 20 C.F.R. §§ 404.321(c)(2) and 404.325.

[53]20 C.F.R. § 404.509(a)(1).

[54]AR 35.

-14-

of benefits for the period beginning on January 26, 2000 and ending on September 10, 2001. However, because the court now concludes that ALJ Alexis properly denied Grow's claim, the Commissioner need not pay any additional benefits.

## V.  CONCLUSION

For the reasons set out above, Grow's motion for remand is **DENIED,** and the decision by the Commissioner to deny payment of additional benefits is **AFFIRMED**.

DATED at Anchorage, Alaska, this 5th day of February 2009.

_____
/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE